**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNIVERSITY HEALTHSYSTEM CONSORTIUM, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13 CV 6683 |
| v. | ) ) ) | Judge Robert M. Dow, Jr. |
| UNITEDHEALTH GROUP, INCORPORATED, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Although four-letter words have a reputation for causing trouble, it is a three-letter acronym, UHC, that has precipitated the present dispute between Plaintiff University Healthsystem Consortium and Defendant UnitedHealth Group, Incorporated. Plaintiff alleges that Defendant improperly has used its trademark, "UHC," in connection with healthcare-related services. Plaintiff alleges that Defendant violated the federal Lanham Act, 15 U.S.C. § 1051 *et seq.*, by willfully infringing a federally registered trademark, engaging in unfair competition, and falsely designating the origin of and falsely advertising the mark. Plaintiff also alleges that Defendant willfully violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 501, and engaged in common law trademark infringement and unfair competition.

Defendant answered Plaintiff's complaint, and then, one week later and without the benefit of discovery, filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [23]. In its motion for summary judgment, Defendant argues that Plaintiff's claims are untimely and should be barred by the equitable doctrine of laches or the applicable state statutes of limitation. Plaintiff moved to strike one of the declarations Defendant submitted in

support of its summary judgment motion. See [50 and 51]. Plaintiff also filed both a substantive response to the motion and a Rule 56(d) motion for additional discovery [55 and 56]. Plaintiff later filed a motion for leave to file a surreply in response to Defendant's reply brief [77].

For the reasons stated below, Plaintiff's motion to strike [50 and 51] is denied. Plaintiff's motion for leave to file surreply [77] is granted. Defendant's motion for summary judgment [23] is denied. And Plaintiff's motion for additional discovery [55 and 56] is denied as moot. This matter is set for status on October 2, 2014 at 9:00 a.m.

**I.      Motion to Strike**

The Court first addresses the motion to strike, as its resolution will affect the universe of facts available for the Court's consideration.

In support of its motion for summary judgment, Defendant has submitted a declaration from Thomas Paul, Chief Consumer Officer of UnitedHealthcare. The Paul declaration provides the exclusive evidentiary support for seven of the fifty factual assertions contained in Defendant's Local Rule 56.1 statement. Plaintiff has moved to strike the Paul declaration on the grounds that it fails to comply with Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602, both of which require testimony to be based on personal knowledge, and that the exhibits attached to the Paul declaration lack foundation or are inadmissible hearsay. Defendant responds that Paul's declaration is appropriate for the Court's consideration notwithstanding his lack of personal knowledge as to some of its contents because he has been designated as a corporate witness pursuant to Federal Rule of Civil Procedure 30(b)(6). Defendant also defends the admissibility of the exhibits to the declaration.

It is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and

assertions that are unsupported by the documented evidence of record offered in support of the statement. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004). Thus, any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on Defendant's summary judgment motion. Motions to strike at the summary judgment stage are disfavored and generally unnecessary, for the Court may only consider admissible evidence when ruling on a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

In any event, the Court concludes that the Paul declaration itself is admissible. Rule 30(b)(6) permits a party to name as a deponent a public or private corporation or other legal entity. See Fed. R. Civ. P. 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.* Defendant designated Paul to be its Rule 30(b)(6) representative, and he sat for a deposition in that capacity on January 10, 2014. Although Plaintiff is correct that Rule 30(b)(6) by its terms refers only to depositions, courts have held that a Rule 30(b)(6) witness may testify at trial "as to matters within corporate knowledge to which he testified in deposition." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). That is, a Rule 30(b)(6) witness may testify both in a deposition and at trial to matters as to which she lacks personal knowledge, notwithstanding the requirements of Federal Rule of Evidence 602. The Court discerns little principled distinction between allowing a Rule 30(b)(6) witness to testify at trial without personal knowledge and allowing him to testify via affidavit at the summary judgment

stage without personal knowledge, particularly where the witness's Rule 30(b)(6) deposition expressly reaffirmed the accuracy of the affidavit. See [70-8] at 150:9-151:23. See *Humphreys v. Bank of Am.*, 557 F. App'x 416, 424 n.6 (6th Cir. 2014); *cf. Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (clarifying that affidavits may be admissible at summary judgment "provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live").

Other courts considering the issue of whether Rule 56(c)(4)'s personal knowledge requirement applies to Rule 30(b)(6) witnesses have allowed the witnesses' affidavits to be submitted at the summary judgment stage. See, *e.g.*, *Humphreys*, 557 F. App'x at 424 n.6; *Stalley v. ADS Alliance Data Sys., Inc.*, 2014 WL 129069, at *2-3 (M.D. Fla. Jan. 14, 2014); *Weinstein v. D.C. Hous. Auth.*, 931 F.Supp.2d 178, 186–87 (D.D.C. 2013) (collecting cases). The Court finds the reasoning of these cases more persuasive, and the factual circumstances more analogous to those presented here, than the facts and reasoning espoused in *Soutter v. Equifax Information Services, LLC*, 299 F.R.D. 126, 132 (E.D. Va. 2014), and the cases cited by Plaintiff.

Plaintiff also contends that all of the exhibits attached to the Paul declaration should be stricken because they lack foundation or are improper hearsay. Again, requesting that this material be stricken is unnecessary, as the Court will consider only evidence that is admissible. For instance, to the extent that Plaintiff challenges Exhibits A and B, the Court notes that it has not relied on Paul's statements purportedly supported by them because the contents of the Exhibits do not support the contents of the statements. The Court is not persuaded by Plaintiff's contentions as to the remainder of the Exhibits and accordingly denies the motion to strike.

## II. Motion for Leave to File Surreply

Plaintiff has moved for leave to file a surreply brief in response to Defendant's reply

brief. The decision whether to grant a motion for leave to file a surreply is within the Court's discretion. See *Johnny Blastoff, Inc. v. L.A. Rams*, 188 F.3d 427, 439 (7th Cir. 1999). In some instances, allowing the filing of a surreply "vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005); see also *Franek v. Walmart Stores, Inc.*, 2009 WL 674269, at *19 n.14 (N.D. Ill. Mar.13, 2009) (recognizing that a surreply might be appropriate "when a moving party 'sandbags' an adversary by raising new arguments in a reply brief"). However, denial of a motion to file a surreply is appropriate when the movant has had the opportunity to thoroughly brief the issues. See *Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 911 (N.D. Ill. 2010). Moreover, there simply is no need for a surreply when "[e]ach brief in the sequence on the motion fairly responded to the arguments in the brief that preceded it." See *Franek*, 2009 WL 674269, at * 19 n.14.

Plaintiff contends that its surreply brief "is necessary to address the new arguments made and new relief requested by [Defendant] in its reply memorandum," as well as "to correct the mischaracterizations of [Plaintiff's] arguments advanced by [Defendant]." [77] at 1. Defendant acknowledges that it is a "close[ ] question" whether a surreply may be warranted in connection with at least a portion of its reply brief. See [81] at 3. The Court accordingly exercises its discretion in favor of allowing the brief and grants Plaintiff's motion for leave to file a surreply. The Court will consider the brief to the extent that doing so is necessary and appropriate.

### III. Motion for Summary Judgment

#### A. Background

The facts below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to Plaintiff, the non-moving party. *E.g.*, *Fed. Trade Comm'n v. Bay*

*Area Bus. Council*, 423 F.3d 627, 634 (7th Cir. 2005). Facts not presented in the Local Rule 56.1 statements and those not properly supported by admissible evidence have not been considered by the Court.

Plaintiff is a not-for-profit corporation headquartered in Chicago, Illinois. Plaintiff was formed in 1984 as an alliance of the nation's leading non-profit academic medical centers. Defendant is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. Defendant, which currently is number 17 on the "Fortune 500" list of the largest 500 companies in the United States, emerged from a 2000 merger between UnitedHealthCare Corporation and UnitedHealth Group, Incorporated. Prior to the merger, UnitedHealthCare Corporation had been known as such since 1983 and had been publicly traded since 1984.

Plaintiff has used the mark "UHC" since 1984. Plaintiff owns federal trademark registrations for the word marks "UHC," "UHC PATIENT SAFETY NET," and "UHC PSN." Plaintiff also owns federal trademark registrations for two design marks consisting of "UHC" accompanied by sphere graphics. Plaintiff's registration for the UHC word mark is incontestable under 15 U.S.C. § 1065. Plaintiff has used the web address "www.uhc.edu" since at least September 1996. Defendant does not dispute that it learned of Plaintiff's trademark "UHC" no later than April 23, 2002.

Defendant also has staked a claim to the acronym UHC. Defendant referred to itself as "UHC" in press releases as early as 1985. In 1987, one of United HealthCare Corporation's wholly owned subsidiaries changed its name to UHC Management Company, Inc. UHC Management Company was issued a certificate of authority to do business in Illinois in 1989. In 1992, Defendant filed Iowa state trademark registrations for the marks "UHC PRIMARY" and "UHC CHOICE." On at least seven occasions from 1989 to 2004, newspaper and journal

articles referred to United HealthCare Corporation and UnitedHealthcare as "UHC." Defendant also used the acronym "UHC" in its 1995 Form 10-K Annual Report. Defendant registered the web address "www.uhc.com," and used it as early as 1996. Usage of the website has grown over time. The uhc.com website receives, on average, more than 45,000 visitors per day. Defendant admits that uhc.com is its "primary business entry point" and serves as the "front lobby" for segments of its health benefits business.

Since 1999, Defendant also has used the web address "myuhc.com." The myuhc.com website is designed for and used by individuals who receive health insurance from Defendant, though the website itself is publicly accessible. The services offered on the site have evolved over time. There are more than 10 million customer accounts on myuhc.com, and the site receives over 1.6 million unique logins per month. Defendant continues to invest in driving traffic to the myuhc.com website. In each year from 2011 to 2013, Defendant spent significant sums promoting myuhc.com. Defendant characterizes the expenditure as covering maintenance, operation, and promotion of myuhc. Defendant does not dispute that both its promotion of and the use of uhc.com and myuhc.com have increased over time. Defendant also admits that it has invested significantly in both uhc.com and myuhc.com.

Defendant filed an application to register "MYUHC.COM" as a federal trademark on August 28, 2001. The United States Patent & Trademark Office ("PTO") published the "MYUHC.COM" mark for registration on August 13, 2002. Plaintiff did not file an opposition to the registration of "MYUHC.COM." The PTO issued a federal registration certificate for "MYUHC.COM" on November 5, 2002. "MYUHC.COM" became incontestable under 15 U.S.C. § 1065 in February 2009, and was renewed in November 2012.

On January 29, 2001, Defendant filed a federal application to register the mark "UHC

ONLINE" based on an intent to use the mark in connection with "providing information in the fields of healthcare and healthcare coverage via the Internet." The United States Patent & Trademark Office ("PTO") published the mark for opposition on March 19, 2002. Plaintiff filed a request for extension of time to oppose Defendant's registration of "UHC ONLINE" on April 23, 2002. The PTO granted Plaintiff's request and extended the time for opposition to May 18, 2002. Plaintiff ultimately did not file an opposition, and the PTO issued a Notice of Allowance for Defendant to use the mark "UHC ONLINE" on November 12, 2002. Defendant subsequently took no action regarding "UHC ONLINE," however, and the PTO issued a Notice of Abandonment on January 6, 2004.

Several years later, on October 12, 2007, Defendant filed a federal application to register the mark "UHC-iENROLL." Defendant began using the mark "UHC-iENROLL" in commerce on November 1, 2007, in connection with facilitating application and enrollment into health care benefit programs and health care benefit plans and providing online insurance services in the field of health care. UHC-iENROLL is not a consumer-facing tool; it used only by Defendant's employees and agents who exclusively sell Defendant's products. The PTO published "UHC-iENROLL" for opposition on August 19, 2008. Plaintiff did not file an opposition to "UHC-iENROLL." The PTO issued Defendant a federal registration certificate for "UHC-iENROLL" on June 22, 2010.

In response to what it views as a shift toward a "consumer engagement model" of healthcare, Defendant in 2011 debuted new services under the marks "UHCTV," "UHCTV FOR HEALTH AND HAPPINESS," and "UHC.TV." Videos available at UHCTV "feature the UHC mark." Defendant launched UHCTV with "the mission to engage with all Americans, not just those with, or being offered a UnitedHealthcare benefit plan," to "deliver health and wellness-

related information to all Americans," and to "create a more educated membership body and strengthen the brand relationship." Defendant views its use of UHCTV as a means of "establish[ing] another channel, another venue for consumers to learn and engage around important health care topics" and "help[ing] [Defendant] in establishing a relationship with the consumers." Defendant promoted UHCTV by leveraging celebrity, reality, and motivational talent. Defendant also utilized various online channels to promote awareness of UHC.TV, including online video sites Hulu, Yahoo! TV, and YouTube; web search engines Google and Yahoo!; and social networking websites Facebook, Twitter, and LinkedIn. Defendant does not dispute that it spent more than one million dollars on UHCTV and UHCTV FOR HEALTH AND HAPPINESS 2011, 2012, and 2013. According to Plaintiff, these funds were spent on "advertising." According to Defendant, these funds "were spent on maintaining, operating, and promoting" the websites.

Defendant filed federal applications to register the marks "UHC.TV," "UHCTV," and "UHCTV FOR HEALTH AND HAPPINESS" on November 17, 2011. The PTO published "UHC.TV" for opposition on September 25, 2012, and published "UHCTV" and "UHCTV FOR HEALTH AND HAPPINESS" for opposition on October 16, 2012. Plaintiff filed requests for extensions of time to oppose all three of these marks on November 14, 2012. Plaintiff filed a Notice of Opposition to "UHCTV" and "UHCTV FOR HEALTH AND HAPPINESS" on February 13, 2013 but did not file an opposition to "UHC.TV."

In June 2013, Defendant updated its branding guidelines to formally introduce a new abbreviated masterbrand logo that prominently features the acronym UHC. Previous branding and naming guidelines indicated that spelling out the full name UnitedHealthcare was preferred.

Plaintiff avers that within the last year, it has seen a "dramatic increase" in its receipt of

communications intended for Defendant, including from "numerous potential job candidates." For instance, on February 6, 2013, Plaintiff received two copies of what purported to be the patient medical records of one of Defendant's insureds. Plaintiff filed its oppositions to "UHCTV" and "UHCTV FOR HEALTH AND HAPPINESS" one week later. In April 2013, Plaintiff also provided evidence of some alleged confusion to lawyers who represented Defendant at that time.

Plaintiff continued to receive communications for Defendant throughout the remainder of 2013 and into 2014. On or about July 26, 2013, Plaintiff received requests for medical records and billing records in connection with litigation that Plaintiff was not involved in. On or about July 31, 2013, and again on or about November 12, 2013, Plaintiff received documents pertaining to pending bankruptcy litigation in which Defendant but not Plaintiff was a creditor. On August 2, 2013, Plaintiff received an e-mail from an individual purporting to be one of Defendant's insureds that contained complaints about Defendant's customer service. On August 16, 2013, Plaintiff received an e-mail from someone who purported to be the customer service manager at *Health Affairs* magazine. The e-mail referred to a "National account type that would provide access to all of the United Healthcare sites." On August 21, 2013, Plaintiff received a phone call from an individual purporting to be a former insured of Defendant and seeking information about why Defendant had terminated her insurance coverage. Plaintiff and Defendant had an in-person meeting about the alleged confusion in September 2013.

On or about September 30, 2013, Plaintiff received a newsletter, *Prescriptions for Excellence in Health Care*, that was addressed to one of Plaintiff's employees at Plaintiff's street address but was directed at "UnitedHealthCare." On December 5, 2013, Plaintiff received a voicemail message from someone who purported to be a physician's assistant "calling back" to

obtain authorization for a medical procedure. On January 13, 2014, Plaintiff received a phone call from someone who purported to be an employee of Defendant; the caller inquired where to send adoption paperwork that she had received from of Defendant's insureds. Plaintiff avers that it coexisted with Defendant for years before it became aware of "any confusion by anyone about a relationship or affiliation" between itself and Defendant. Defendant retorts that Plaintiff "has had notice" of Defendant's "potential claim of rights in UHC since June 10, 1993, when [Defendant] filed an extension of time to oppose Plaintiff's registration of the UHC mark."

### B. Legal Standard

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Carroll*, 698 F.3d at 564 (7th Cir. 2012). This Court neither judges the credibility of witnesses nor evaluates the weight of the evidence when addressing a summary judgment motion, see *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir.2009); however, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

C. Analysis

Defendant argues that it is entitled to summary judgment on Plaintiff's three Lanham Act claims under the equitable doctrine of laches. The doctrine of laches is derived from the maxim that those who sleep on their rights lose them. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). Laches may operate to bar Lanham Act claims for damages as well as claims for equitable relief. See *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999). To prevail on the affirmative defense of laches, Defendant must prove three things: (1) that Plaintiff had actual or constructive notice of Defendant's use of UHC; (2) that Plaintiff showed an unreasonable lack of diligence in taking action as to Defendant's use of UHC; and (3) that Defendant would be prejudiced by allowing Plaintiff to assert its rights at this time. *Chattanoga*, 301 F.3d at 792-93. Although laches typically involves questions of fact, its applicability may be resolved on summary judgment where "the facts necessary for determining whether the defendant suffered material prejudice are not genuinely disputed." *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003)). The Court enjoys considerable discretion in determining the equitable doctrine's applicability in a particular case. See *Hot Wax*, 191 F.3d at 819.

The parties dispute the extent to which Defendant is able to satisfy the first element of the laches defense, both with respect to whether Plaintiff had notice of Defendant's use of UHC and whether Defendant's use of UHC was legally sufficient to trigger laches in any event. As to the latter, Plaintiff contends that the laches "clock" only begins to run with "trademark use." According to Plaintiff, "trademark use" "means that the word or phrase is being used to 'perform[] the trademark function of identifying the source of the merchandise [or services] to the customers.'" [46] at 15 (quoting *Edsal Mfg. Co. v. Vault Brands, Inc.*, 2012 WL 5558849, at

*4 (N.D. Ill. Nov. 15, 2012)). Plaintiff contends that Defendant's "purported historic 'uses' of 'UHC' do not qualify as trademark uses," [46] at 15, and that Defendant "has not alleged that there was any likelihood of confusion as a result of these uses, much less that any confusion was actually occurring in the marketplace." *Id.* at 17. Defendant responds that Plaintiff can (and presumably should) "also sue a defendant for 'non-trademark' use of a mark." [73] at 7.

Defendant has the better of the "trademark use" argument. A leading treatise, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, explains that "trademark use" is not a necessary element of a trademark infringement claim. "The requirement that to be infringing, an accused use must be used as a trademark is not explicit in the Lanham Act. However, unless the accused use is a trademark use, likelihood of confusion is highly unlikely." J. Thomas McCarthy, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 3:3 (4th ed. 2013). Put another way, "'trademark use' is not a separate element of plaintiff's case, but is only one aspect of the likelihood of confusion requirement for infringement." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:11.50 (4th ed. 2013). Because "trademark use" is not a prerequisite to the filing of a lawsuit for trademark infringement, the Court cannot conclude that it is a prerequisite for the application of laches.

That said, Plaintiff's point – though perhaps not its terminology – is well-taken. "Perhaps the reason that it is argued that a non-trademark use of another's mark is not an infringement is that a non-trademark use is highly unlikely to cause actionable confusion." *Id.* And if there were no actionable confusion, Plaintiff would be unable to pursue a claim for infringement. "Logic dictates that 'unreasonable delay' does not include any time before the owner is able to pursue a claim for infringement – otherwise, a trademark owner could be punished for not bringing a claim that he had no right to bring." *What-A-Burger of Virginia, Inc. v. Whataburger,*

*Inc. of Corpus Christi, Texas*, 357 F.3d 441, 449 (4th Cir. 2004). For this reason, courts typically apply laches only where infringement has occurred for an extended period prior to the commencement of litigation. See *id.*; see also *Chattanoga*, 301 F.3d at 793-94 *Hot Wax*, 191 F.3d at 823. Indeed, *McCarthy* expressly states that "[l]aches is not measured from defendant's first unpermitted use of the contested mark. Laches is measured from the date when there was an infringing use sufficient to require legal protest and possible lawsuit. In most cases, this requires legal action only when defendant's infringing acts significantly impact on plaintiff's good will and business reputation." 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:19 (4th ed. 2013); see also *What-A-Burger*, 357 F.3d at 449-50; *Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy*, 314 F.3d 62, 70 (2d. Cir. 2002) ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant.").

This leaves the parties in somewhat awkward positions. To prevail on its laches defense, Defendant must implicitly argue that its "historic" uses of UHC were sufficiently infringing to obligate Plaintiff to defend its marks. And to successfully challenge the application of laches, Plaintiff must implicitly contend that Defendant's early uses of UHC were *not* sufficiently infringing to warrant legal action.

First, however, Defendant must prove that Plaintiff knew or should have known that Defendant was using UHC in an allegedly infringing manner. See *Chattanoga*, 301 F.3d at 793 ("The law is well settled that where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he may have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." (quoting

*Johnson v. Standard Mining Co.*, 148 U.S. 360, 370 (1893))); see also *Monotype Imaging, Inc. v. Bitstream, Inc.*, 2005 WL 936882, at *9 (N.D. Ill. Apr. 21, 2005) ("In order to satisfy the knowledge requirement of a laches defense, a defendant must demonstrate that the plaintiff had knowledge of the defendant's infringement, not merely knowledge of the existence of the accused activity.") (citing *What-a-Burger*, 357 F.3d at 449). Defendant asserts that Plaintiff had actual notice of Defendant's allegedly infringing use of UHC in 2002, when Plaintiff requested an extension of time to oppose Defendant's registration of the mark "UHC ONLINE." However, Plaintiff points out that the registration application was predicated upon an intent to use and that Defendant subsequently abandoned the application. The Court is skeptical that a mere declaration of an "intent to use" constitutes "use" sufficient to give rise to actual or constructive notice of potential infringement such that an obligation to sue is triggered.

Defendant also points to various events that "should have put Plaintiff on constructive notice," including Defendant's use of UHC in press releases, its 1989 qualification to do business in Illinois, its 1992 registration of trademarks "UHC PRIMARY" and "UHC CHOICE" in Iowa, its 1995 SEC filings, its 1996 registration of the uhc.com domain name, and its 2001 applications to register the marks "MYUHC.COM" and "UHC ONLINE." Defendant has not presented any evidence that Plaintiff knew or should have known that any of these activities were likely to have an impact on Plaintiff's use of UHC or on Plaintiff's goodwill and business reputation.

Even if the Court were to conclude that Defendant's evidence of actual or constructive notice is sufficient to establish the first element of laches, the Court cannot conclude at this time that any delay by Plaintiff in bringing suit was unreasonable because there is a question of fact as to whether the doctrine of "progressive encroachment" may excuse any delay. Under the doctrine of progressive encroachment, "where a defendant begins use of a trademark or trade

dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Chattanoga*, 301 F.3d at 794; see also *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 823 (7th Cir. 2002). The doctrine of progressive encroachment is predicated on the notion discussed above, that "a trademark owner is not forced by the rule of laches to sue until the likelihood of confusion caused by the accused use presents a significant danger to the mark." *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 WL 6839815, at *11 (N.D. Ill. Dec. 27, 2013). A party may invoke the doctrine of progressive encroachment by presenting evidence that the alleged infringer has, "over time," altered the direction of its marketing or manufacturing efforts to more directly interfere with the party's mark. *Chattanoga*, 301 F.3d at 794; see also *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 623 (5th Cir. 2013). As a general rule, a party seeking to demonstrate progressive encroachment must show that "(1) during the period of delay the plaintiff could reasonably conclude that it should not bring suit to challenge the allegedly infringing activity; (2) the defendant materially altered its infringing activities; and (3) suit was not unreasonably delayed after the alteration in infringing activity." *Oriental Fin. Grp., Inc. v. Cooperative de Ahorro y Crédito Oriental*, 698 F.3d 9, 21-22 (1st Cir. 2012).

There is no dispute that Plaintiff and Defendant both used some variant of "UHC" without incident for many years, even though both are in the healthcare field and have similarly named websites. A reasonable factfinder could conclude that Plaintiff therefore had no basis to challenge Defendant's use of the acronym after even after learning in 2002 that Defendant intended to use the mark "UHC ONLINE." Plaintiff has presented evidence that Defendant recently has increased its spending on its UHC products and websites, expanded their reaches, and has sought to register new trademarks containing "UHC." Plaintiff also has presented

16

evidence that Defendant in June 2013 updated its branding guidelines to formally introduce a new abbreviated masterbrand logo that prominently features the UHC acronym, departing from its previous longstanding guidance that spelling out the full name UnitedHealthcare was preferred. The record also contains evidence that Defendant has broadened the target market of consumers to whom it directs products and services bearing UHC, that there has been a significant uptick in confusion, and that Plaintiff brought suit in the wake of the increased confusion. Construing the facts and drawing all reasonable inferences in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant has progressively encroached on Plaintiff's use of UHC. Accordingly, Defendant's motion for summary judgment on laches grounds [23] is respectfully denied. The Court need not and does not reach the question of whether Defendant was prejudiced by any delay, nor does it dismiss the state law claims as time-barred at this time.

## IV. Motion for Additional Discovery

In addition to opposing Defendant's motion for summary judgment, Plaintiff filed a Rule 56(d) motion for additional discovery. Plaintiff requested that Defendant's "summary judgment motion be denied or that [Plaintiff] be permitted leave to engage in discovery necessary to respond to the factual issues raised by [Defendant]'s motion." *Id.* at 9. Because the Court has denied the motion for summary judgment, this motion is moot and accordingly is denied on that basis.

## V. Conclusion

For the reasons stated above, Plaintiff's motion to strike [50 and 51] is denied. Plaintiff's motion for leave to file surreply [77] is granted. Defendant's motion for summary judgment [23] is denied. Plaintiff's motion for additional discovery [55 and 56] is denied as moot. This matter

is set for status on October 2, 2014 at 9:00 a.m.


Dated: September 19, 2014                                  _____
                                                           Robert M. Dow, Jr.
                                                           United States District Judge